The first case today is number 169012 and number 169015, Mission Products Holdings, Inc. v. Old Cold, LLC, et al. Thank you. Good morning, Mr. Cage. Good morning, Your Honor. May I please the Court, Robert Cage for the Appalachian Mission Products Holdings. The Supreme Court's, before I go there, I would like to, if I could, retain one minute for rebuttal, Your Honor. You may. Thank you. The Supreme Court's recent decision in Jevic controls the outcome of this appeal. This case involved a sale process that resulted in an end-of-case event, the sale of substantial realty assets, and a distribution of the consideration of that sale in violation of both the priority rules of the Bankruptcy Code and the rules of the Bankruptcy Code against discrimination among like creditors, known as intra-class discrimination. As a consequence, based on the Supreme Court's ruling in Jevic, the Bankruptcy Court had no authority to approve it. And for that reason, reversal of the Court's decision below is mandated. Suppose SMS had simply bought the debts owed by the, what you say, the favored creditors? I think under Jevic, as it has been applied by the subsequent courts, Your Honor, in particular Judge Sante's opinion in Constellation, I don't think it would matter, frankly, how the purchaser conveyed the consideration with respect to the acquisition of debts. So those creditors, for some reason, couldn't sell their interests in the estate? I think, again, a creditor can certainly purchase claims leading up to the process, and then there are issues as to whether or not, for example, those claims could be designated or otherwise disregarded, and there are certainly provisions for that in the Bankruptcy Code. But as part of the sale process, in other words, as an integral part of the sale process, the purchaser couldn't accomplish... But I'm not even talking about the sale. Isn't it routine that when parties go into bankruptcy, sometimes those who have an interest in the form of a debt owed by the estate may sell that interest to another party? Certainly, but those claims purchases are not part of an end-of-case distribution event, right? Why should it change if it's done in two steps? Because the teaching of Jevic, and it was really the teaching of Braniff before that, is that if you're going to use the sale process in lieu of a plan process, and of course, in modern bankruptcy practice, that is increasingly common, that sale process has to have the same procedural and substantive protections as a plan process. And so certainly, and in fact, the Supreme Court in Jevic made a distinction between things that happened during the case on an interim basis and things that happen as part of a case-ending or substantially case-ending sale or process settlement or dismissal. So those are distinct events. The Supreme Court said, look, certain interim events like critical vendor motions and wage motions, which necessarily alter priorities, are the kinds of things we're going to allow on a pragmatic basis, but not integrated case-ending events like this. How is your client affected by what you describe as the change in priorities? My client is affected in two ways. My client is the largest, even without consideration of our administrative claim, my client is probably the largest unsecured creditor in the case, aside from whatever deficiency claim may be held by the secured lender here, which is now gone. So we have a direct interest in making sure that the distributions occur on an even basis. What happened in this case is that sale consideration was used to pay every unsecured creditor but my client, which unquestionably has rejection damages sort of regardless of the outcome of this and the related appeal. So paying some but not all of the unsecured creditors of the same class is directly prohibited by 1124 of the Bankruptcy Code, the so-called bar on intra-class discrimination. That is one of the procedural protections you're entitled to in a sale process because it pertains to a plan process. The other way we're affected is that my client holds administrative claims as a consequence of post-petition breaches by the debtor. Those administrative claims have not been fully adjudicated, but they are nonetheless extant. One of the things you can't do, and this is the direct on all fours teaching of both Jevick and Constellation and Fryer and other cases decided since Jevick, you can't hop over a priority and pay unsecured claims without paying the priority claims first. Counsel, if I could get you to step back. Sure. There is an argument made by your opponent that the only issue before us is the good faith of the sale. I take it you're attempting to draw an equivalence between the two arguments you just made and good faith. Do you have any case law to support that? I think there is an equivalence. There isn't a case distinctly that says violating the priorities of the bankruptcy code per Jevick is per se good faith, but it stands to reason that that has to be the case. No, I'm not at all sure I follow your analogy. I actually have some doubts that Jevick has anything to do with this matter, so I'd like to hear you on the basic good faith argument. Sure. I think there are actually, aside from Jevick, I think there are three reasons why 363M offers no protection to the sale order below. The first, and importantly, is the fact that facts came to light after the sale order was entered and while appeals were pending, which went directly to the good faith of the purchaser. In fact, Judge Deasy recognized it as such, and it's not at all clear that Judge Deasy would maintain his good faith finding if asked again. And I'm referring specifically to the so-called inventory motion, otherwise known as the comfort motion. Following the sale and while appeals were pending to the BAP, and you'll recall from the briefing, but I'll briefly summarize, one of the terms of the bid submitted by S&S was that they would, quote, in the debtor for sale so that the debtor could sell that inventory, raise money, and pay creditors with it. The bids had that feature in common. Following the approval of the sale, after the sale hearing, and while appeals were pending, the debtor approached the court with a subsequent what's called comfort motion, asking the court to approve a sale of that inventory to S&S at a percentage of its book value. The basis of selling to S&S in the debtor's papers was that a term of S&S's bid was that its intellectual property rights attached to the inventory that had been left in the estate, and therefore the only person that the inventory could be sold to was S&S. That limitation on S&S's bid was not announced at the auction. It was not revealed at the evidentiary hearing, nor was it indicated at any time until the appeals were pending. That disclosure was, in fact, crippling to the alleged superiority of S&S's bid, because if there was a restriction on the sale of the inventory, the sale of the inventory wasn't worth what it was said to be worth. When this was presented to Judge Deasy on this basis, what Judge Deasy said to the parties was that if this restriction existed, he was not going to enforce it, because it was contrary to the bid. In fact, he said, if in fact that's true, that mission would in fact be right with respect to its appeal, not only as to good faith, but as to the collusive nature of the sale. We quoted Judge Deasy on page 19 of our brief, but I'll just briefly recite it here. Judge Deasy said, I understand you, S&S, through the debtor, think there are IP restrictions. I'm going to ignore that. I'm not sure the purchase agreement would require that result, but I'm not sure the bankruptcy code would require that result. And if someone said that was the case, well, that might prove Mission's counsel's point, and I certainly don't want to do that. That subsequent disclosure under the Zerker trust case we cited means that the good faith finding essentially is vitiated, and this court can ignore it, because Judge Deasy never had an opportunity to rule on that fact. The other point, I'm sorry, yes, Your Honor. Well, following up on Judge Lynch's question, what facts are in the record that were not considered by the prior courts, the bankruptcy court and BAP, in determining the issue of good faith? Most specifically, this undisclosed secret restriction on Mission's bid, which went directly to the value of their bid. And that wasn't considered by those courts? It was not, Your Honor. Normally what would happen in such a situation if a fact arose later on after ruling is you would take that fact back to the judge and ask the judge to reconsider his ruling. He wouldn't normally take it to the court of appeals for us in the first instance to make a qualitative evaluation of the effect on that, particularly where, as I understand it, he in effect said there was no such provision. He didn't say there wasn't any. He just said he wouldn't enforce it. So it seems he gave a remedy. Why would we presume what he would have done had there been a motion for reconsideration filed? Because the remedy doesn't do anything with respect to the sale. In other words, it doesn't correct anything with respect to the fact that the bids were in. Why would he take that directly to us instead of to Judge Deasy? Well, Zerker Trust actually directly addresses that to Judge Deasy indirectly. For one thing, under the divestiture rule, Judge Deasy didn't have jurisdiction to address it at that point. And what the Zerker Trust appellate court said was there are essentially two solutions when you're faced with these facts. We could remand to the bankruptcy court to consider whether or not this fact would have affected the good faith finding, or we can, for efficiency reasons, simply ignore the good faith finding and proceed to the merits. And that's what the Zerker Trust court did. And I think that's appropriate here. Let me see if I understand the answer to my question, particularly what you have stated. The only facts that you claim affect this are facts that the court below didn't have before because it was not in the record. It was not in the record. It wasn't disclosed. This was essentially a secret restriction in the bid that wasn't disclosed. So that fact is not before us because it's not in the record. As I said, it's in the briefs. It's in the transcript of the proceeding before Judge Deasy, which is actually part of the appellate record here, but wasn't considered by Judge Deasy because it occurred well after the sale had been approved. The only other response, I appreciate my time has passed, but the other response I would give to Judge Lynch's question on 363M is that the conduct of the parties below deprives them of 360M protection on due process grounds. You cannot close within three hours of the order and then claim that the inability to obtain a stay deprives the appellate review. The Halliday and Winstead decisions say as much under the old version of the rule. I think they say that they gave you advance notice that that's what they would be doing. No, there was no advance notice. I think they told the court that they had to close before the 18th or else they'd have a problem. There is no record evidence of an emergency basis to close. The court found no need to close promptly. There was no presentation to the court to justify the waiver of the period. Where did I get the impression that they told the court when they made their filing that they needed to close by the 18th? I think the only argument they made in that respect was that the order itself contained a waiver provision, which I think all buyers and settlers try to get that. And as Judge Carey pointed out in Filings of Basement, as every court to rule on this has said, it's completely inappropriate to waive the 14-day automatic stay period in the sale order unless there is a complete emergency. And even then, you don't eliminate the period entirely. You shorten it. The shortest period we've found in a reported case is five days. Am I correct, though, that you never filed a motion for a stay? We did not, Your Honor, because the closing actually had already occurred. That's for us to judge, because that doesn't make a lot of sense to me. Well, you can't say what was going on. You could have easily filed a motion for a stay. You can't say what's already occurred, Your Honor. The thing you have to stay is the closing of the sale. That's right. You knew the sale was coming on. You knew what the remedy was going to be. And throughout all of your different filings about the stay, about the sale, you never once said to the bankruptcy court, and we're going to want a stay. Your Honor, the stay is automatic. The burden is not on us to impose the stay. The burden is on the party that's completed the sale to waive the stay. Rule 6004 has an automatic 14-day stay. We get that without asking. In order for that to be waived, there has to be an evidentiary showing of a genuine emergency requiring this sale closed within 14 days inside the 14-day period. And again, it's an abuse of discretion by the bankruptcy court to waive that automatic stay unless there is a full factual showing that there's a reason for doing so. No such factual showing here. If you allow what happened here, I can guarantee you that every single party will start structuring its transactions to avoid appellate relief. I can think of a way to do it right now where nobody would ever be able to get appellate relief. I would close an escrow, and I would make my escrow provision, my escrow trigger provision the entry of a sale order without a stay. Only if you tell the judge and the opposing party in your motion that you need to close by a certain day. Which they didn't hear. There was no fact presented at the sale hearing that there was an emergency need to file. And, in fact, you could never have found that fact. They were sitting on a large pile of cash they had advanced just for the purpose of establishing a credit bid, which they hadn't spent, which was supposedly dedicated to administrative expenses for which no fee applications had been filed. I must admit, my memory of the record was in accord with Judge Kayada's. Judge Deasy made no factual finding whatsoever that there was an emergency. That wasn't the question. The question was, you've got at least two judges up there who have somewhere in the record got an impression that the other side gave notice, told the judge, told you that they needed to close by the 18th, and you're saying that's not in the record, so. I mean, if they want to put that on the record and it's there, I'll stand corrected, Your Honor. But I think, frankly, it doesn't affect whatsoever the fact that you need a full evidentiary presentation of the need for that emergency.  So I'm trying to get your argument. Even if you had notice and even if you did not reply saying, you know, we want the automatic stay period, you're saying even if all of that is true, nonetheless there was a violation because there must be findings? There must be a presentation of evidence and there must be findings. It's just the acceptance of the evidence about the need to close before the 18th. Why doesn't that suffice? Because under the rule it's not enough for counsel just to say we want to close by the 18th or we have to close by the 18th. There has to actually be some evidence supporting that allegation. Here there was none. There was no finding by the court, and the reason there was no finding by the court is there was no evidence. Nothing in the entire presentation of the sale hearing suggested this was an emergency and I needed to close. Very often judges do things that they don't explain, but it's implicit in the record. It's pretty obvious why they did it. So your argument that there had to be findings just doesn't accord with our general law. But you're saying there's nothing there that makes it obvious why the judge did not have a stay? There was nothing there that made it obvious, Your Honor. There's, in fact, nothing there that made it even likely. I've been doing this for a very long time. Trust me, if we had any inkling that they were going to try to close within two business hours remaining on a Friday before we could file a motion for a stay on a Monday, we would have filed a motion for a stay when the order had entered. Okay, and this is important because it affects the scope of appellate review, right? Understood. And I think what Winstead says and what Halliday says is that if you don't provide a meaningful opportunity for the party to obtain a stay, and that was the case here, then you can't lean on 363M. It just has no play whatsoever. So our reasons why we think it doesn't apply are, one, the undisclosed fact that Judge Deasy did not have a chance to consider. Two, the fact that depriving us of an opportunity to get a stay is a serious violation of due process. And frankly, in the bankruptcy arena, it has even other constitutional concerns because you have to ensure a reasonable opportunity for review by an Article III court. And thirdly, we just think they're not a good faith purchaser for the litany of reasons that we listed in our brief. And I appreciate them well over. Thank you. Thank you, Your Honor. Mr. Candon, good morning. Good morning, Your Honors. Christopher Candon for Schleicher and Stevens Hotels. There are a number of things I'd like to address first. And before I kind of go into my prepared argument with respect to mootness, which is part of the argument that I was planning on addressing, and my colleague, Mr. Desiderio, would address the JEVIC and application of JEVIC, if at all. With respect to this stay period issue, the bankruptcy court at the sale hearing noticed the situation of a financial need. The money was limited. It said to the parties, this was around Thanksgiving, I believe, that we need to get this done quickly. Debtor's counsel said, we will be prepared to close immediately. This is all in our briefs. Thereafter, the bankruptcy court asked the parties to submit proposed orders with respect to the sale. In the debtor's proposed order, the waiver of the period was set forth there. It was also in the original proposed order back in September, which was filed in the original sale motion. Then, both parties were provided an opportunity to submit their proposed orders. Mission did not include any request for a period of time. The following event was filed on December 15th, because the parties had anticipated a rather quick sale order, and two weeks later, there still had not been one. So, on December 15th, the debtors filed a notice with the court saying, if we don't have a sale order by December 18th, we are going to need to come back in and revisit the cash collateral issue and the lending issue, which would then also affect the sale price and perhaps other events. So then, the sale order is entered on December 18th, at which point the parties were prepared to close. And, at that point, they had already been in the preparations for closing for over three weeks at that point. So, the suggestion that a sophisticated bankruptcy attorney was not aware that a closing would be ready to go at that point is just nonsense. And, I also would point to you that at the reply to our motion to dismiss that was filed in this court, which is pending, I believe, they included a cite from Collier's, which talks about the 6004H waiver. And, at the bottom of that, it says, unless the party, you know, the waiver can't be done unless, the waiver is subject to a party coming to them and informing the court that they were going to seek a stay. Interestingly enough, when the briefs are filed in this court, that provision of the Collier's, quote, disappears. So, the idea that it was their burden to inform the court that they were looking for a stay period, they acknowledged in an earlier brief, but then eliminated in the subsequent briefing. So, I think they're... Okay, what about his argument about the undisclosed limitation on the sale to only persons? There's literally nothing in the record with respect to an undisclosed secret deal because there was none. The parties did not have any deal. The bidding that was done at the sale process was done in accordance with mission structure. You can look at the briefs that were filed in here. S&S adopted the mission structure, which left the inventory behind. That happened on the fly at the auction. There was no secret deal about how the inventory was going to be dealt with at a later date. Now, the examiner, the independent examiner in the court, in the case, filed a report saying, I anticipate that the winner of the auction is probably going to buy this at a round cost. And, that's what actually occurred. They did buy it at cost. The sale order was approved by the same exact judge that found that we were good faith purchasers. And, that order was never appealed by mission, who participated in the process. So, if... Your brother referred to some statement by Judge Deasy that if it were so restricted, he would not enforce it. Again, is that what the record shows? I don't... I assume that he's properly quoting what Judge Deasy said. But, I don't have any inference that that would have changed the good faith purchaser designation. Because, the good faith purchaser designation is measured upon the buyer's activity during the course of the sale process. And, the bankruptcy court has numerous findings and rulings. And, there was an independent examiner, as well, found that we were a good faith purchaser. I don't think it would have impacted. And, I think it's quite a stretch to suggest that Judge Deasy would have changed his opinion based upon that. Especially, since he approved the sale and mission was granted an opportunity to object. In fact, I believe the debtor even offered mission the inventory if they wanted to purchase it and they declined. I think this appeal could be dismissed for mootness based upon the fact they didn't receive a stay or didn't even seek a stay. I think it could be dismissed on mootness on the basis that even if there is an exception... Even if there is an exception, it's only for those appeals that affect the validity of the sale. This one, obviously, or that did not affect the validity of the sale. Excuse me. And, this one, obviously, is trying to attempt to undo the sale. So, I also believe if there is any exception to statutory mootness, then equitable mootness also applies. You know, I just have a sort of institutional question on the equitable mootness. At least in theory, at the point a case gets to the BAP, there are certain conditions and the BAP could find, no, it's not equitably moot. But by the time it gets to us on the Court of Appeals, there may be other conditions that happen. We don't take evidence on the Court of Appeals. So, how are we supposed to look at that question of equitable mootness, which has to do with how easy it is to undo the transaction? I understand, Your Honor. I actually struggled with the situation myself because the record closed on December of 2015. And so, the actual record of what has occurred from there until now, we're talking 21 months after of a business having been run. I mean, I don't know that there can be much other than the fact that 21 months have passed and they're asking for this Court to undo a sale that, I mean, there just is too much that has occurred. New employees, new contracts, new business. And this Court does not take evidence, but I think it can take notice that a company that's been in operation for 21 months. Sorry. I recognize the conflict with respect to the evidentiary record on equitable mootness, but I think as well, a company that's been in operation for 21 months. You're the expert in these matters. I'm not. I don't know that I've ever been to all that. I just wondered if any court had ever really discussed that issue. No, I appreciate it. Thank you. Thank you. Mr. Bracciadario. Good morning, Your Honors. Just to point out one thing, I can confirm that the debtor did indeed offer the merchandise to the mission and they declined, so there was no secret deal. Is that in the record? That is in the record. It's in our brief. I'll address Javik and why it's inapplicable, and we agree with Judge Lynch's inclinations. The Supreme Court was absolutely clear that it limited its ruling to whether a bankruptcy court has legal power to order a priority-skipping kind of distribution scheme in connection with a Chapter 11 dismissal. Dismissal was emphasized in the order, probably because of their learnings from other cases where bankruptcy counsels try and contort the findings for other circumstances. We're not dealing with a dismissal here. We're also not dealing with the distribution of estate assets. As Your Honor pointed out, this is an independent third party who assumed liabilities as part of a transaction. There's an absolute bankruptcy justification for doing so. Someone who's purchasing a go-in concern would like to preserve the value of that go-in concern to make sure they get the benefit of the bargain. It's routine for purchasers to assume liabilities, employee obligations, certain trade vendors that they continue to have relationships with, in order to make sure that what they buy continues as a go-in concern. What Mission is asking is, they'll say, no, you can never assume any liability in the context of a sale again because it may skip a priority. That doesn't make any sense. both 363 and the ability of a debtor or a trustee to maximize value for an estate by reducing claims against the estate and also possibly getting a higher purchase price because there's certainty that the buyer is getting what they bargained for. As I understand the argument, I think if you pose two hypotheticals, one is the purchaser just pours cash into the estate. That's right. And then post-sale, the bankruptcy estate is left with a bunch of obligations and some cash, and that will then be parsed out based on the priority rules and based on the non-discrimination rules. That's right. And so they said that's the way it should work. If the purchaser goes in and instead of pouring in cash, says, I like you, I like you, I don't like you, I like you, I don't like you, buys off the ones that they want to favor and essentially puts in no cash, then you get a different result at the payout end that alters the first scenario. Because I understand that that's the argument. That's right. But there's a rationale for being able to pick those certain liabilities. It's an ongoing concern itself. The buyer wants to make sure they're getting what they bargained for. If you just pour cash in, there may be a distribution of a nickel per creditor, and you'll have some unhappy trade creditors that have no obligation to continue to perform going forward. It's the same thing with assumption and rejection of contracts. A buyer can pick and choose the contracts it wants to take. There's a reason for it. So your example would be if this were a factory and the electric utility was an unsecured creditor, you'd want to make sure they kept supplying power posts. That's right. Even more important are your employees. Employee obligations, vacation pay is commonly assumed because you don't want to have 100 unhappy employees coming to work the next day for a new operator and saying, where's my vacation pay? I've been working here for 10 years, and all of a sudden it's all gone. It's important for a purchaser to be able to do this. And there's nothing in JEVIC that says you can't do this in the context of the sale. Furthermore, the other thing that's very distinguishable about JEVIC is there's almost a million dollars of cash in the estate still that has yet to be distributed that will be either distributed under a plan, in a conversion, or whatever remedies are available. But at the end of the day, and this data intends to follow a plan, but we've been hamstrung by the appeals. At the end of the day, there is recourse. There is recourse for mission. There's recourse for other creditors because there is a pot of cash to be distributed. This is not a situation where there is no cash left in the estate. And therefore, it is completely distinguishable from JEVIC. We will have to get through the plan process, and we'll have to meet our burdens at that time. But the debtor demonstrated a good, valid business reason for the sale. The court approved that based on a full evidentiary record. And that also concluded that the evidentiary record was... So the presence of a good, valid reason for the sale, that would be the mechanism for distinguishing this situation from situations that were really just subterfuge to get around the absolute priority rules? I think that's right. And JEVIC even acknowledges that you're allowed to... If there's a valid bankruptcy justification for doing so, you can get around the priority rules. They both play hand-in-hand with each other. And that's what happened here. And the debtor met its burden by doing so. And the most important thing is the bankruptcy court applied the right standards, the right legal standards. The mission would have to come here and show that the findings were clearly erroneous. There is nothing in the record to suggest, unless you completely distort the record, to suggest that the bankruptcy court's findings were clearly erroneous. Thank you, Aaron. Thank you. Mr. Cage? Thank you, Aaron. I'll be very quick. First, JEVIC unquestionably applies to sales, not just to structured dismissals. The authority relied upon by the Supreme Court, Braniff and Lionel, were sale cases. The entire rationale of the case was based on sale cases. Fryer decided after JEVIC, Constellation decided after JEVIC, are sale cases. Both of them say that you can't do precisely what this purchaser and this debtor are trying to do. When you say precisely, I had not thought that all those cases involved an assumption of debts. I thought they had to do with the way the plan called for assets to be distributed. Fryer involved both, Your Honor, and actually in some other sort of interesting facts, like transferring real property to people from outside the estate and some other facts. Constellation specifically dealt with both assumption of debt and cash payments. But did they deal with a situation in which there was a finding that there was a good faith, legitimate, reasonable business justification for wanting to have a sale? Judge Sanchi and Constellation, in fact, acknowledged that the transaction being presented to him was probably in the best interest of creditors in the estate, that his decision would be depriving creditors of money and leaving money in the purchaser's pocket, but simply said that JEVIC did not permit him to allow the preference of some creditors over others in the same class, and JEVIC did not permit him to allow classes to be skipped. As he said, this is the new JEVIC world. We can't do the things that we used to do. I would not quibble with the point that bankruptcy practitioners, I've done it, have done all kinds of creative things to get around priorities to make deals happen. What JEVIC says is those days are done. That if you want to use the bankruptcy process, if you want to use a sale in lieu of a plan, then you have to comport with planned restrictions, planned procedures, and planned priorities. We may not like it, but that's the law. And that's what we have to live with at this point. Thank you. Thank you.